926 F.2d 142
 32 Fed. R. Evid. Serv. 315
 Steven GENTILE and William
Rydstrom, Plaintiffs-Appellees-
Cross-Appellants,
v.
The COUNTY OF SUFFOLK, a Municipal Entity, Detective Robert
Sisino, Detective Clifford Christ, Police Officer Michael
Rogers, Police Officer Allen Prim, Police Officers Johns
Does, individually and in their official capacities,
Defendants - Appellants - Cross - Appellees.
 No. 203, Dockets 90-7307, 90-7327.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 4, 1990.
Decided Feb. 11, 1991.
 
 E. Thomas Boyle, Suffolk County Atty., Hauppauge, N.Y. (Caroline Levy, Asst. County Atty., of counsel), for defendants-appellants-cross-appellees.
 James I. Meyerson, New York City (Jonathan C. Moore, of counsel), for plaintiffs-appellees-cross-appellants.
 Julius L. Chambers, Cornelia T.L. Pillard, Charles Stephen Ralston, Clyde E. Murphy, Attys., NAACP Legal Defense and Educational Fund, Inc., New York City, as amicus curiae.
 Before FEINBERG, VAN GRAAFEILAND and KEARSE, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 Defendant County of Suffolk and individual defendants Robert Sisino, Clifford Christ, Michael Rogers and Allen Prim appeal from a judgment of the United States District Court for the Eastern District of New York, dated February 21, 1990, after a jury trial before Judge Jack B. Weinstein, granting plaintiffs Steven Gentile and William Rydstrom the sum of $150,000 each from defendant County of Suffolk (hereafter the County) for defendants' violation of their constitutional and state law rights. The jury found both the County and the individual defendants liable for malicious prosecution under state and federal law. Plaintiffs cross-appeal, challenging an aspect of the district court's ruling on damages and its denial of leave to amend their complaint in order to assert an abuse of process claim against the County.
 
 
 2
 This case grows out of a brawl between plaintiffs and four County police officers, and centers on a pattern of police and prosecutorial misconduct thereafter, including the cover-up of the police officers' role in the incident and the subsequent malicious prosecution of plaintiffs on robbery and assault charges. The parties disagree principally on whether the district judge properly admitted into evidence selected portions of a report by a state investigatory commission relating to past misconduct of the County Police Department and the District Attorney's Office, and whether the court's decision to defer the hearing on the trustworthiness of the report until after completion of trial was error. For the reasons given below, we affirm the judgment of the district court in all respects.
 
 I. Factual Background
 
 3
 A. Confrontation with Police and Subsequent Arrest
 
 
 4
 The violent confrontation that led to this suit occurred in a diner in the early morning of July 28, 1981. All of the parties to the dispute had been frequenting bars prior to their arrival at the diner. Plaintiffs Gentile and Rydstrom entered the diner first, accompanied by two female companions who were behaving in a loud and obnoxious manner. Plaintiffs' female companions subjected the individual defendants and their sole female companion to obscene remarks upon their initial entry into the diner, and then further harassed them after they were seated by throwing food at their table. Defendants Sisino, Christ, Rogers and Prim--all County policemen who were not in uniform--responded to this provocation by warning plaintiffs and then by using force. Plaintiffs claimed at trial that none of the defendants identified themselves as policemen in approaching them, while defendants testified that before the onset of the fight one of the officers had displayed his badge and asked plaintiffs to stop behaving in a disorderly manner.
 
 
 5
 In the course of the fight between plaintiffs and defendants, officer Rogers' gun fell to the ground. Plaintiffs testified that after recovering his gun Rogers pointed it at Rydstrom's head and threatened to shoot, an allegation denied by defendants. The fight eventually extended out into the parking lot in front of the diner, where plaintiff Gentile picked up and retained possession of Officer Sisino's wallet from the ground, allegedly believing that it belonged to Rydstrom. Sisino subsequently claimed that the wallet and accompanying identification were stolen from him as he was lying on his back outside the diner.
 
 
 6
 Shortly after plaintiffs drove away from the diner, uniformed County police arrived, responding to a call made by a diner employee. Although the police stopped plaintiffs' car near the diner, the commanding officer at the scene, Sergeant Dillworth, allowed plaintiffs to leave, believing that they were not criminally liable for their conduct at the diner. None of the four defendant officers, at least two of whom had suffered serious injuries, asked that plaintiffs be arrested for assault or robbery or even held for questioning.
 
 
 7
 Three days later, on July 31, 1981, plaintiffs were arrested after Sisino told his superiors that his badge had been stolen. Shortly after the incident, the Internal Affairs Division of the County Police Department began a departmental investigation. While Sergeant Dillworth was later charged with neglecting his duty for failing to detain plaintiffs, none of the four defendants actually involved in the fighting was charged with any wrong-doing. On November 27, 1981, plaintiffs were indicted on two counts of robbery against Sisino and three counts of assault against Sisino, Christ and Rogers.
 
 B. State Prosecutions
 
 8
 The first trial of Gentile and Rydstrom on the criminal charges against them ended in a mistrial. In 1982, the state trial court dismissed the indictments because retrial was barred by the Double Jeopardy Clause. People v. Gentile, 114 Misc.2d 610, 452 N.Y.S.2d 507 (Suffolk Co.Ct.1982). More than a year later, the Appellate Division, Second Department, reversed this ruling and reinstated the indictments. People v. Gentile, 96 A.D.2d 950, 466 N.Y.S.2d 405 (2d Dept.1983). In April 1985, a jury found plaintiff Rydstrom guilty of assault and plaintiff Gentile guilty of robbery. It should be noted that the Assistant District Attorney who handled both the first and second trials, Timothy Mazzei, was a close friend of Officer Sisino and after the second trial met and eventually married Sisino's daughter.
 
 
 9
 In February 1987, the convictions were reversed and the indictment dismissed by the Appellate Division, Second Department, on the grounds that the evidence was "insufficient in quality and quantity to justify the verdict." People v. Gentile, 127 A.D.2d 686, 687, 511 N.Y.S.2d 901 (2d Dept.1987). The court noted that the testimony of Officer Sisino regarding the alleged theft of his badge was sufficiently "inconsistent" with the evidence to "raise a reasonable doubt as a matter of law as to the defendants' guilt of the crime of robbery." Id. at 688, 511 N.Y.S.2d 901. Since the count on which Rydstrom had been convicted was assault in the course of the commission of the robbery, the appellate court also reversed his conviction. Id. The court went on to say that it would have reversed the convictions even if the evidence had been sufficient because, among other reasons:
 
 
 10
 [W]e believe that, in view of the Assistant District Attorney's admittedly close personal relationship with the complainants (he became engaged to Sisino's daughter) and his confessed deep emotional involvement in the case, he should neither have tried this case nor been involved in its course.
 
 
 11
 Id. at 689, 511 N.Y.S.2d 901.
 
 
 12
 Following dismissal of the indictments, plaintiffs requested the County Police Commissioner and the County District Attorney to investigate defendant police officers for perjury and other related offenses. The Chief Law Assistant to the District Attorney refused this request, and Captain Hough of the Police Department responded that a thorough investigation of the incident had been conducted and revealed no foundation for plaintiffs' allegations.
 
 C. Section 1983 Action
 
 13
 In July 1987, plaintiffs initiated this civil action pursuant to 42 U.S.C. Sec. 1983 and the district court's pendent jurisdiction over related state law claims. Plaintiffs argued that a cover-up of the diner incident began almost immediately after the fight, when police officers discovered that a badge had been misplaced and found it necessary to concoct a story in order to shield their own misconduct at the diner from official scrutiny. As confirmation of this claim, plaintiffs pointed to defendants' delay in reporting any criminal wrongdoing until the day after the episode in question, when they began to appreciate the need to protect themselves from possible charges of misconduct that might jeopardize their prospects for continued employment or retirement benefits.
 
 
 14
 In addition to claiming against the individual defendants, plaintiffs also sued the County, alleging that it was responsible for the actions of the individual defendants and relying on Monell v. New York City Dep't of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiffs claimed that the actions of the County Police Department and the District Attorney's Office in refusing seriously to investigate the incident or to discipline the involved officers constituted a pattern of conduct that ratified and even encouraged the officers' violations by recklessly ignoring evidence that County employees had violated plaintiffs' constitutional rights in attempting to secure their malicious prosecution.
 
 
 15
 Trial commenced in May 1989, and lasted for seven days; 24 witnesses, including plaintiffs and all of the individual defendants, testified. Shortly before trial, the Temporary Commission of Investigation of the State of New York (the Commission) issued a report entitled "An Investigation of the Suffolk County District Attorney's Office and Police Department" (the SIC Report). This followed a formal investigation that had been started by the Commission over three years before in January 1986. The SIC Report concluded that the County District Attorney's office and the Police Department had systematically mismanaged their offices, had tolerated and even ratified employee misconduct and had failed to investigate or punish such conduct. Although the Commission initially focused its inquiry on the handling of homicide cases, the scope of the investigation was soon expanded to cover allegations of impropriety and lack of oversight in several different areas of criminal law.
 
 
 16
 At trial, plaintiffs sought to introduce the entire SIC Report as well as several other prior reports cited in it. Prior to trial, plaintiffs had made clear their intention to offer this evidence. Defendants, however, did not request an evidentiary hearing on the trustworthiness of the Report until the third day of the trial, when plaintiffs sought to read portions of it to the jury. After preliminary argument, the district court declined to interrupt the trial to conduct an evidentiary hearing. It informed defendants that if the County was found liable they would be allowed to seek a post-trial review of the trustworthiness of the Report.
 
 
 17
 The court refused to admit the entire SIC Report at trial, or any of the other reports offered by plaintiffs. Instead, it permitted each side to select a few findings from the Report to be read to the jury. The parties agreed to add a preface to the selected excerpts, briefly explaining where the findings came from and why only portions rather than the entire 199-page Report were being read. This introduction also emphasized that the Report did not make any findings with respect to the Gentile and Rydstrom case and hence was relevant only to the claim against the County. The quotations from the Report read to the jury stated that both the County Police Department and the District Attorney's Office had systematically failed over a period of years adequately to investigate and to discipline cases of employee misconduct that had been brought to their attention. Another excerpt, however, noted that the Commission was confident that the "vast majority of police and prosecutorial personnel in Suffolk are persons of ability, industry and integrity."[1] After reading the above to the jury, the district judge stressed again that there was no indication in the Report that the individual defendants "did anything wrong," and that the findings should be considered only if the jury first found the individual defendants liable.
 
 
 18
 At the conclusion of the trial, the jury returned a verdict for plaintiffs, finding the individual defendants liable but assessing no monetary damages against them. The jury found the County liable under both state and federal law, and assessed a total of $150,000 in damages for each plaintiff, allocated equally to the state and federal causes of action.
 
 D. Post-Trial Trustworthiness Hearing
 
 19
 After the verdict, defendants requested and were granted a post-trial hearing on the admissibility of the Report. They called four witnesses to support their claim that excerpts from the Report should not have been admitted. Plaintiffs called no witnesses. After a three-day hearing, Judge Weinstein concluded that defendants failed to introduce credible proof establishing that the factual findings read to the jury were unreliable. The judge's ruling is incorporated in an opinion issued in February 1990. See note 1 supra. The judge found that the Report was relevant and trustworthy and that its probative force far outweighed any unfair prejudice resulting from its admission. Accordingly, Judge Weinstein denied defendants' motion for judgment notwithstanding the verdict and affirmed the jury verdict awarding a total of $300,000 in damages to plaintiffs against the County. This appeal by defendants and cross-appeal by plaintiffs followed.
 
 II. Discussion
 
 20
 A. Propriety of the Post-Trial Evidentiary Hearing
 
 
 21
 Defendants argue that the district court erred in admitting some of the central findings of the SIC Report relating to the County's pattern of negligence in failing to investigate and discipline instances of police and prosecutorial misconduct. Defendants focus in particular on the district court's decision to admit selected excerpts from the SIC Report without a hearing and to conduct a trustworthiness hearing only at the post-trial stage after the jury had already reached a finding of liability against the County. They insist that the district court's deferral of a full trustworthiness determination until the conclusion of trial constituted a denial of their right to a timely and meaningful trustworthiness hearing. Defendants argue that the delay was prejudicial because when the hearing took place the court had already invested much time and effort in conducting the trial and the jury had already relied on this evidence in rendering a verdict. This, it is argued, necessarily compromised the trial court's impartiality in reaching a post-trial determination of the trustworthiness of the Report.
 
 
 22
 It is important to note that, contrary to defendants' claim, the district court did not defer a ruling on the admissibility of selected portions of the Report until after the post-trial trustworthiness hearing, but "found as a preliminary matter that they were admissible." Gentile v. County of Suffolk, 129 F.R.D. at 440. He thereby explicitly relied on Fed.R.Evid. 104(a), which states that "[p]reliminary questions concerning the ... admissibility of evidence shall be determined by the court...." Id. Indeed, in admitting excerpts of the Report, Judge Weinstein clearly stated at trial that he was making a factual finding that these excerpts were trustworthy, thereby complying with the condition governing the public records exception to the hearsay rule, Fed.R.Evid. 803(8)(C). That rule provides for the admissibility "in civil actions and proceedings and against the Government in criminal cases [of] factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."
 
 
 23
 It is true that in deciding to admit selected portions of the Report, Judge Weinstein rejected defendants' request to conduct an evidentiary hearing on its trustworthiness before reaching a ruling on admissibility. He noted, however, that he would have been willing to grant such a hearing prior to trial, but that, in view of plaintiffs' pretrial notice that the Report would be offered into evidence, defendants' request for a such a hearing on the third day of trial was untimely. At the same time, he informed defendants' counsel that he would give him the opportunity to seek a post-trial review of the trustworthiness of the Report if the County was found liable so that defendants would "not [be] prejudiced by your failure to raise the issue in a timely way...." After the jury verdict against the County, defendants did move for and were granted a post-trial hearing on admissibility, and it was in this context that Judge Weinstein fully considered and rejected their arguments that selected portions of the Report were untrustworthy.
 
 
 24
 In light of this sequence of events, the judge acted fully within the scope of his authority both in first admitting selected portions of the Report without an evidentiary hearing, and in later allowing defendants to contest the trustworthiness of the Report in a post-trial proceeding. Defendants are not entitled as a matter of law to an evidentiary hearing to resolve questions of admissibility merely because they request one. As stated in United States v. Boffa, 89 F.R.D. 523, 528 (D.Del.1981):
 
 
 25
 In general, an evidentiary hearing need not be granted as a matter of course and must be held "only if the moving papers allege facts with sufficient definiteness, clarity and specificity to enable the trial court to conclude that relief must be granted if the facts alleged are proved." United States v. Carrion, 463 F.2d 704, 706 (9th Cir.1972). General and conclusory factual allegations which are based upon mere suspicion or conjecture, however, will not suffice to necessitate a hearing. Cohen v. United States, 378 F.2d 751, 760 (9th Cir.), cert. denied, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967). Moreover, if facts urged in support of a hearing would not entitle the moving party to relief as a matter of law, no evidentiary hearing is required. See United States v. Irwin, 612 F.2d 1182 (9th Cir.1980).
 
 
 26
 There is no evidence on the record before us that defendants alleged facts with sufficient specificity that would, if proved, have required the district court to rule the SIC Report inadmissible as a matter of law and thus made the granting of an evidentiary hearing mandatory. Defendants' allegations in their memorandum of law briefing this question at trial were general and conclusory, focusing on the Report's supposed lack of relevance, its possible prejudicial effect and "extant" (though unspecified) "questions concerning the integrity of the report."
 
 
 27
 Indeed, prevailing law on this issue indicates that admissibility of evidence of this sort is generally favored. See Rule 803(8)(C) of the Fed.R.Evid. Reports such as those issued by the Commission are presumed to be "admissible in the first instance," Masemer v. Delmarva Power and Light Co., 723 F.Supp. 1019, 1021 (D.Del.1989), and the "party opposing the introduction of a report bears the burden of coming forward with enough 'negative factors' to persuade a court that a report should not be admitted." Id., citing Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 167, 109 S.Ct. 439, 448, 102 L.Ed.2d 445 (1988). This presumption of admissibility extends not merely to factual determinations in the narrow sense, but also to conclusions or opinions that are based upon a factual investigation. Beech Aircraft Corp. v. Rainey, 488 U.S. at 170, 109 S.Ct. at 450. Since defendants did not meet their burden of specifying "negative factors" that would outweigh the presumption favoring admissibility of the SIC Report, they were certainly not entitled as a matter of law to an evidentiary hearing in the middle of a trial.
 
 
 28
 Although we find that defendants were not entitled as a matter of law to a trustworthiness hearing, defendants' argument suggests that once the judge agreed to have one, it should have been conducted prior to the completion of trial and the jury's verdict. To do otherwise, the argument goes, compromises the trial court's impartiality in reaching a final determination on the issue of trustworthiness. While this argument has some surface plausibility, it fails to recognize that a decision to postpone a hearing on a motion to the post-trial phase, though not ordinarily favored, falls within the discretion of the district court and is generally permissible for good cause. See United States v. Thompson, 558 F.2d 522, 525 (9th Cir.1977), cert. denied, 435 U.S. 914, 98 S.Ct. 1466, 55 L.Ed.2d 504 (1978); see also United States v. Montilla, 870 F.2d 549 (1989), modified on other grounds, 907 F.2d 115 (9th Cir.1990); United States v. Tortorello, 480 F.2d 764, 785 n. 18 (2d Cir.), cert. denied, 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973); United States v. Boffa, 89 F.R.D. at 533-34.
 
 
 29
 In this case, defendants had pretrial notice of plaintiffs' intention to introduce the SIC Report, failed to request an evidentiary hearing until the third day of trial and did not controvert a presumption favoring its admission.[2] Under the circumstances, it was certainly within the discretion of the district court to admit carefully selected excerpts from the Report and defer a full hearing on trustworthiness until after the completion of trial. This decision was justified on grounds of trial management and judicial economy and also by the court's concern about balancing the danger of prejudice posed by unedited admission of the Report against its probative value in supporting plaintiffs' Monell claim. Indeed, the court's decision to grant defendants a post-trial hearing afforded them greater procedural protection than they were legally entitled to, and reflected its desire to avoid the possible prejudice resulting from defendants' own failure to file a timely motion for such a hearing.
 
 
 30
 Matters would stand quite differently, of course, if defendants could sustain the claim, advanced in oral argument, that the deferral of the trustworthiness hearing to the post-trial stage somehow inhibited them from bringing evidence to the attention of the jury during the trial itself that would have impeached or otherwise undermined the credibility of admitted portions of the Report. In making this claim, defendants rely in particular on a statement made by Judge Weinstein in deciding to admit selected portions of the Report:
 
 
 31
 I am very reluctant to allow this in, but I am not going to sit here for weeks and weeks and weeks and in effect retry the SIC matter, which is what would be required if the plaintiffs were to make out a case under Monell.
 
 
 32
 Defendants argue that this statement discouraged them from introducing evidence at trial to contest the trustworthiness of the Report.
 
 
 33
 We find defendants' argument without merit both on conceptual and factual grounds. First, defendants fail to distinguish between a trustworthiness determination, which is made by the trial court to decide whether certain evidence (e.g., a government report) is admissible, and a credibility determination, which is made by the trier of fact to decide exactly what weight to accord to evidence that has been admitted. Second, the argument has no basis in the trial record. It is significant in this connection that after Judge Weinstein made a factual finding at trial that the SIC Report was trustworthy in order to admit portions of it, he explicitly denied plaintiffs' motion that the jury be instructed that the Report was trustworthy, emphasizing that his trustworthiness determination "is a basis for my f[i]nding in order to admit it" but "I'm not going to characterize it for the jury." Furthermore, in prefacing his reading of excerpts of the Report to the jury he noted that "[t]he findings of this Commission are irrelevant to the claims against the four police officers and are admitted in regard to the claim against Suffolk County, for whatever weight you wish to give them " (emphasis added). Finally, in rejecting defendants' claim at the post-trial trustworthiness hearing that they were prejudiced by admission of the Report, Judge Weinstein explicitly noted that defendants had ample opportunity at trial to introduce testimony diminishing the credibility of the Report:
 
 
 34
 The trustworthiness and probative value of the SIC report, considered in conjunction with the limiting instructions given by the court, other protections afforded defendants and the opportunity defendants were given to produce evidence in derogation of the report, adequately protected against the risk that the excerpts read to the jury may have had an unfair prejudicial effect.
 
 
 35
 129 F.R.D. at 461 (emphasis added).
 
 
 36
 We see no merit to defendants' contention that Judge Weinstein's statement at trial, quoted above, that he did not want to retry the SIC matter somehow inhibited them from calling witnesses to challenge the Report. We believe that this argument rests on a misreading of the remark in the overall context of the trial. The judge's concern here was that, if he did not admit any portion of the Report, plaintiffs would be in the position of having to introduce an extensive range of evidence, already considered by the Commission, in order to prove that the individual defendants' violation of their rights was the result of an established custom or policy of the County. It was clear, in other words, that the judge's concern was not with the burden posed by the prospect of defendants' challenge to the Report, but with the additional evidentiary burden imposed upon plaintiffs' case by not admitting portions of it. Judge Weinstein reiterated this concern in ruling on defendants' post-trial trustworthiness motion:
 
 
 37
 Were reports such as the SIC report to be excluded, plaintiffs would be forced to introduce proof of innumerable individual incidents of police and prosecutorial misconduct in order to show that a municipal practice, policy or custom existed.... Such a limitation would also needlessly duplicate--at great cost to the parties, the court and the taxpayers--the work of a competent agency already vested with the expertise and legislative authority to conduct such inquiries.
 
 
 38
 Id. at 459-60.
 
 
 39
 At oral argument of this appeal, we pressed defendants' counsel to identify a specific reference in the trial record that would demonstrate that defendants were precluded from calling witnesses to attack the credibility of the SIC Report. Counsel was asked to submit a letter that would pinpoint in the record exactly where the district court restricted defendants on this issue. The written response of defendants' counsel, however, fails to persuade us that the court prohibited defendants from presenting evidence at trial that would challenge the credibility of the Report.[3] It appears that defendants' decision not to call witnesses at trial on the issue of the credibility of the Report was a product of understandable trial strategy[4] rather than the result of any ruling by the district court.
 
 
 40
 In sum, we find that in following the procedure regarding the SIC Report set forth above, the judge did not commit reversible error.
 
 
 41
 Aside from challenging the timing of the trustworthiness evidentiary hearing, defendants also allege that the hearing itself was procedurally flawed and did not provide them with a full and fair opportunity to examine the trustworthiness of the Report. They claim that the district court refused to permit them to call either Dean Trager, Chairman of the Commission, or any of the Commissioners, and that they were unable to review approximately 4,000 pages of transcript of testimony that the Commission took at private hearings. However, when the question of calling the Commission Chairman as a witness at the post-trial hearing was initially raised, Judge Weinstein pointed out that this might pose particular problems but explicitly invited defendants to call other members of the Commission as an alternative. Defendants thereafter apparently made no attempt to call any of the five Commissioners other than Dean Trager at the post-trial hearing, and their witness list submitted in advance of the hearing did not include the names of any other Commissioners. Moreover, defendants do not advance any specific allegations suggesting that the district court abused its discretion in its discovery rulings at the trustworthiness hearing. In view of defendants' failure to identify any "negative factors" rebutting the presumption of the SIC Report's trustworthiness, we find that the court's refusal to grant certain contested discovery motions did not deny defendants their opportunity for a full and fair trustworthiness hearing.
 
 B. Admissibility of the SIC Report
 
 42
 Defendants also claim, apart from the issues of the timing and conduct of the trustworthiness hearing, that the district court erred in finding that selected excerpts from the SIC Report were admissible. They allege that the selected portions of the Report admitted by the district court were irrelevant, untrustworthy and prejudicial, thereby violating rules 402, 403 and 803(8)(C) of the Fed.R.Evid.
 
 
 43
 A trial court "has broad discretion in determining whether proffered evidence should be admitted ... and in general in the 'absence of a significant showing of unfair prejudice, evidence with substantial probative value should not be excluded.' " Martell v. Boardwalk Enterprises, Inc., 748 F.2d 740, 747 (2d Cir.1984) (citation omitted). Defendants offer no persuasive grounds to sustain their argument that the district court abused its discretion in ruling that selected portions of the SIC Report were admissible. Judge Weinstein wrote a convincing, 85-page opinion, see note 1 supra, in which he thoroughly canvassed all the key considerations pertaining to admissibility--namely, relevance, trustworthiness, prejudice, and trial economy--and found the Report admissible. We simply cannot say that the court's ruling on admissibility constituted an abuse of discretion.
 
 
 44
 The judge's analysis of relevance carefully distinguished the present case from Janetka v. Dabe, 892 F.2d 187 (2d Cir.1989), upon which defendants rely. In that case, this court sustained a district court ruling excluding the same SIC Report because the plaintiff had failed as an initial matter to show that it was relevant to his case. Judge Weinstein noted that in Janetka, unlike the present case, the plaintiff did not produce a copy of the Report for the court, and, moreover, the procedural posture of the case was entirely different. 129 F.R.D. at 445. Furthermore, the judge noted that in this case, the SIC Report was relevant in view of the independent evidence introduced by plaintiffs suggesting that high-ranking County officials twice ratified the misconduct of individual police officers, thereby corroborating that the individual police misconduct was the result of an established practice or policy. Id. at 446.
 
 
 45
 In analyzing the trustworthiness of the Report, Judge Weinstein reviewed five separate factors--timeliness of the investigation, special skill or experience of the investigating officials, procedures governing any hearings, existence of motivation problems and finality of the findings--and found that the Report was trustworthy. We certainly cannot say that this finding was clearly erroneous. United States v. Workman, 860 F.2d 140, 144 (4th Cir.1988), cert. denied, 489 U.S. 1078, 109 S.Ct. 1529, 103 L.Ed.2d 834 (1989). Indeed, given the thoroughness of the judge's treatment of the relevant issues and the persuasiveness of his conclusion that the Report was admissible, we see no reason to add to his opinion.
 
 
 46
 C. Admissibility of the Appellate Division Decision
 
 
 47
 Defendants also argue that the district court erred in admitting selected portions of the second Appellate Division decision, which set aside the criminal verdict against plaintiffs in state court and dismissed their indictment. People v. Gentile, 127 A.D.2d at 686-89. Defendants insist that it was prejudicial for Judge Weinstein to admit the substance of this decision into evidence after the judge had initially ruled that it could not be admitted because the prejudice to defendants would outweigh its probative force.
 
 
 48
 However, relevant portions of the Appellate Division decision were admitted only as part of the investigation report of Lt. Loughlin of the County Police Department, who was asked by Police Commissioner Treader after the Appellate Division's ruling to investigate defendant police officers for perjury and other offenses committed in connection with the prosecution of plaintiffs. Plaintiffs introduced this report into evidence to show that Lt. Loughlin's investigation into plaintiffs' allegations, which ultimately and unjustifiably vindicated the conduct of defendant police officers, was cursory and inadequate. In his investigation report, Lt. Loughlin cited a substantial excerpt from the Appellate Division decision, which he then argued did not support the inference that defendants actually perjured themselves at the trial of plaintiffs. Our review of Lt. Loughlin's report indicates that the included portions of the Appellate Division's decision, contained in the unredacted version of the report submitted by plaintiffs and admitted at trial, are crucial for understanding the overall significance of the investigation report, and that the redacted version offered by defendants would have undermined the document's evidentiary force. For this reason, we reject defendants' argument that the district court abused its discretion in admitting the unredacted version of the investigation report containing portions of the Appellate Division decision.
 
 D. Problem of Causal Proof
 
 49
 Defendants further claim that plaintiffs did not establish sufficient evidence of a causal connection between the County's negligent disciplinary policies in handling cases of police and prosecutorial misconduct and the conduct of individual defendants in this case and thereby failed to fulfill the Monell standard for a finding of municipal liability. They argue that under Monell there must be affirmative evidence of a causal connection between the alleged municipal policy and the conduct of the individual policemen and that the record at trial is devoid of such evidence. Defendants also claim that the judge's charge on this aspect of the case was inadequate.
 
 
 50
 These arguments are without merit. Plaintiffs were not obliged to produce particular evidence that defendants had specific knowledge of a declared policy of the County and acted on this knowledge in promoting the malicious prosecution of plaintiffs. This is only one method--and not the exclusive one--of establishing the necessary link between municipal practice and individual behavior. The critical question here is whether there is sufficient evidence in the record of municipal policy, custom or practice, so that a jury could reasonably infer that the individual conduct in this case was causally connected to the policy.[5] See Batista v. Rodriquez, 702 F.2d 393, 398 (2d Cir.1983), which states that "a causal connection between the City's policy of inaction and the arrests and assault might permissibly be implied" from "conduct" "such as inadequate training and supervision or prior instances of unusual brutality indicating deliberate indifference or gross negligence on the part of the municipal officials in charge." Cf. Fiacco v. City of Rensselaer, N.Y., 783 F.2d 319, 327 (2d Cir.1986), cert. denied, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987). As Judge Weinstein properly instructed the jury, the issue is whether there was "evidence that the action of the employee which deprived [the defendant] of his federal right was the result of an official policy of the municipality or governmental custom." There can be little doubt on the record here that there was sufficient evidence to support such an inference. The judge noted in his opinion:
 
 
 51
 The appropriate inquiry in this Monell-type claim focuses on the actual or constructive knowledge of the municipality as well as upon the implied knowledge and reliance of municipal employees on that practice. Not only does the SIC report tend to establish the existence of a municipal policy or practice, but it also supports plaintiffs' allegation that the police and the District Attorney's Office were likely ... to consistently ignore evidence of misconduct on the part of the defendant officers and to sanction and cover up any wrongdoing connected with the Gentile and Rydstrom investigation.
 
 
 52
 129 F.R.D. at 446. We reject defendants' claim that there was insufficient evidence to sustain a Monell claim against the County.
 
 E. Damages Issues and Other Arguments
 
 53
 Defendants also argue that the jury's damage award against the County should be reduced because it is duplicative. In rendering its verdict in conjunction with interrogatories on a form submitted to them by the court, the jury found damages against the County in the total sum of $150,000 for each plaintiff, that is, $75,000 on the state law cause of action for malicious prosecution and $75,000 on the section 1983 action. Defendants claim that since the elements of damage caused by the two causes of action are identical and arise out of the same acts, plaintiffs should be entitled only to a single recovery. Accordingly, they maintain that the assessment of damages for each plaintiff should be reduced from $150,000 to $75,000.
 
 
 54
 Defendants rely on Wickham Contracting Co. v. Board of Education, 715 F.2d 21, 28 (2d Cir.1983), which held that when a plaintiff seeks compensation for the same damages under different legal theories of wrongdoing, the plaintiff should receive compensation for an item of damages only once. We agree with that proposition, but are not persuaded that it was violated here. In Wickham, the court was dealing with a discrete set of acts--namely, pressure on third parties to cease doing business with an aggrieved company--and a single type of injury--namely, economic injury to an ongoing business enterprise. In the present case, however, plaintiffs presented substantial evidence indicating that they suffered from multiple injuries as a result of the violation of their rights under state and federal law. These injuries included, among others, pain and suffering accompanying an extended period of prosecution, several days of false imprisonment for one of the plaintiffs, psychological trauma induced by the improper exercise of the police and prosecutorial apparatus, loss of job opportunities owing to the effects of municipal harassment and substantial attorney's fees in the range of $45,000 for each plaintiff. From this vantage-point, the jury's damage award of a total sum of $150,000 for each plaintiff was by no means excessive and fell comfortably within the range of the jury's proper discretion.
 
 
 55
 Defendants argue that the fact that the jury divided their award for each plaintiff into two equal parts--$75,000 on the state law cause of action and $75,000 on the federal cause of action--indicates that the jury impermissibly compensated each plaintiff twice for identical injuries. But it is equally conceivable that the jury found that each plaintiff suffered $150,000 worth of discrete, unduplicated injuries as a result of the County's violations of law, and merely split the total amount equally between the state and federal causes of action in announcing their award to the court on the form submitted to it. This supposition is supported by the jury's insistence, in response to the court's appropriate polling after the verdict, that the jury did intend to award a total of $150,000 to each plaintiff and that the damages awarded under state law and federal law were "independent."
 
 
 56
 Duplication of recovery occurs "by compensating a single injury under two different names," Hysell v. Iowa Public Serv. Co., 559 F.2d 468, 473 (8th Cir.1977). However, defendants do not demonstrate that a jury's award is duplicative merely by noting that it allocated the damages under two different causes of action. It is, of course, possible that the jury committed the error of duplicating damages here, but defendants have failed to establish this allegation with any degree of certainty.
 
 
 57
 The determination of the proper measure of damages in a section 1983 action frequently poses difficult issues of law. See Memphis Community School Dist. v. Stachura, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). The problem is compounded when there are pendent state law claims and the inquiry whether there was double compensation for a single injury resulting from violation of distinct legal rights occurs after the verdict. It would have been helpful if the district court had emphasized to the jury that it should not compensate for the same injury twice merely because it was caused by the violation of two different legal rights, one state and the other federal. Cf. Carter v. Rogers, 805 F.2d 1153, 1157 (4th Cir.1986). However, the question of duplicative damages was not raised by defendants in their requests to charge or in their objections to the court's instructions on the issue of damages, and the court correctly instructed the jury to award only those damages that would reasonably compensate plaintiffs for whatever injuries were proximately caused by defendants' unlawful actions. The policy of deferring to a jury verdict is a powerful one, even in cases in which the jury has taken action that is at first blush difficult to explain. See, e.g., Auwood v. Harry Brandt Booking Office, Inc., 850 F.2d 884, 891 (2d Cir.1988). Under all the circumstances, we simply do not think that we would be justified in upsetting the jury's award in whole or in part.
 
 
 58
 Defendants further argue that since the jury found that the defendant police officers were not liable for any damages to the plaintiffs, the County had to be treated in the same way since its liability was based upon that of the individual defendants. We do not agree. It was not the case that the only basis for the County's liability here was the conduct of the police officer defendants, since plaintiffs also claimed that high County officials ratified the actions of the individual defendants and the jury was instructed on this theory. However, even if that were not the case, the jury's verdict did not absolve the individual defendants; the jury found that they had violated plaintiffs' federal and state law rights. However, it was entirely within the jury's discretion to impose the burden of compensating plaintiffs for their injuries on the County rather than on individual police officers. In this respect the present case is distinguishable from City of Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986), cited by the County, because in that case the individual police officer was found not liable for inflicting a constitutional injury and this was the reason the Court set aside the finding of liability against the City.
 
 
 59
 Defendants also advance other arguments, including the claim that plaintiffs failed to establish that the individual defendants played a major role in their prosecution. The record makes clear that this argument is without merit. We have considered all of defendants' arguments on their appeal and find them without merit.
 
 F. Plaintiffs' Cross-Appeal
 
 60
 Plaintiffs cross-appeal from the judgment of the district court on two grounds. They argue first, citing Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), that they are entitled to an award of nominal damages as a matter of law from the individual defendants because they were found liable for violating their constitutional rights. Accordingly, plaintiffs claim, the district court should either have utilized an additur to satisfy the nominal damages requirement or ordered a new trial on the issue of damages against the individual defendant officers. We believe that this argument is substantially without merit. First, Carey does not address the facts of the present case, since it deals with circumstances in which a plaintiff has suffered a violation of a fundamental constitutional right (i.e., procedural due process) but has failed to offer proof of actual injury. In such circumstances, the Court held, "[b]ecause the right to procedural due process is 'absolute' ... we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury." Id. at 266, 98 S.Ct. at 1053. In the present case, however, there has been proof of actual injury and, moreover, this injury has been compensated by the jury's award of damages. Plaintiffs' argument also neglects the constitutional prohibition of additur under the Seventh Amendment. Dimick v. Schiedt, 293 U.S. 474, 486-88, 55 S.Ct. 296, 301-02, 79 L.Ed. 603 (1935); Crane v. Consolidated Rail Corp., 731 F.2d 1042, 1046 (2d Cir.), cert. denied, 469 U.S. 854, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984).
 
 
 61
 Plaintiffs also argue that the district court erred in refusing to allow them to amend their complaint and submit to the jury a claim against the County of abuse of process for filing a retaliatory counterclaim against plaintiffs. However, the district court did not preclude plaintiffs from submitting evidence on their abuse of process claim, but merely found at the end of trial that they had not submitted enough evidence to warrant sending the claim to the jury. We find no error in this respect.
 
 
 62
 The judgment of the district court is affirmed in all respects.
 
 VAN GRAAFEILAND, Circuit Judge, dissenting:
 
 63
 Plaintiffs based their right to recover in the instant case upon the claim that the defendants violated plaintiffs' state and federal rights by maliciously prosecuting them. Although, as my colleagues point out, "[t]he jury found both the County and the individual defendants liable for malicious prosecution", the jury's verdict was that no damages were caused by the individual defendants but that $300,000 in damages were caused by the County. To say the least, this verdict is bizarre.
 
 
 64
 Plaintiffs' arrest and prosecution were brought about by the individual defendants, the active tortfeasors, not by the County. Had the individual defendants not caused plaintiffs' wrongful arrest and prosecution, plaintiffs could have made no claim for damages against the County. Accordingly, the jury's statement in response to the district judge's inquiry that "no damages were caused by any of the individual defendants" is completely inconsistent with the verdict of $300,000 against the County. See Rowell v. John Hutzler Lumber Co., 228 A.D. 158, 161, 239 N.Y.S. 192, aff'd, 255 N.Y. 581, 175 N.E. 322 (1930); Brothers v. Village of Ilion, 224 A.D. 688, 689, 229 N.Y.S. 44 (1928) (per curiam). Moreover, the verdict violated the district judge's admonition to the jury that "[d]amages are computed in the same way against the municipality as damages are computed under the Federal Civil Rights Law for individual defendants, with one exception, punitive damages...."
 
 
 65
 As a general rule, bizarre verdicts are the end product of bizarre trials. This case is no exception. The $300,000 verdict against the County was the jury's response to excerpts from the report of a State Investigation Commission that were read by the district judge to the jury as if they were gospel. See, e.g.:
 
 
 66
 There were a number of other reports which are referred to in the State Investigation Commission reports of an earlier date, a date which preceded the 1981 events at the diner and beyond, so you could find, therefore, that the County had notice earlier than 1981 that there might have been illegal activities by police which were not sufficiently controlled are, therefore, constituting [sic] a course of conduct.
 
 
 67
 * * * * * *
 
 
 68
 Earlier reports provided the department with notice of the need to reform its procedures in misconduct investigations. However the department did not take that path.
 
 
 69
 * * * * * *
 
 
 70
 You may consider these findings when you are deciding whether the defendant County of Suffolk is liable to the plaintiffs.
 
 
 71
 The $300,000 verdict against the County alone could not have been based on a claim that the County maliciously prosecuted the plaintiffs. The plaintiffs were not prosecuted by the County of Suffolk; they were prosecuted by the State of New York. In presenting the case to the grand jury that indicted the plaintiffs and in thereafter conducting the prosecution, the Suffolk County District Attorney represented the State, not the County. Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir.1988), cert. denied, 488 U.S. 1014, 109 S.Ct. 805, 102 L.Ed.2d 796 (1989). The County had no right to dictate, by policy or otherwise, whether or in what manner the prosecution should be conducted. Id. Accordingly, the County could not be held responsible for any aberrations of the District Attorney in the performance of his prosecutorial duties. Id.
 
 
 72
 Despite this fact, the district judge charged the jury that one of the findings of the State Investigation Commission was that the Suffolk District Attorney's Office had failed to take appropriate action in other instances where it had been informed of misconduct by its own employees and other law enforcement personnel:
 
 
 73
 [O]ne of the findings of the commission has been the systematic failure of the District Attorney's office to investigate and take appropriate action where it has been uncovered or been informed of misconduct by its own employees and other law enforcement personnel.
 
 
 74
 The judge thereafter charged the jury that the plaintiffs' claim was that they were injured as a result of the prosecution against them of criminal charges without probable cause "by the individual defendants and other officials of Suffolk County." It goes without saying that the defendant police officers were not "officials" of Suffolk County. The only "other official[ ]" who was involved in the prosecution of the plaintiffs was the District Attorney or his assistant. The district judge continued:
 
 
 75
 A municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials.
 
 
 76
 In exercising his judgment whether or not to prosecute, a district attorney is not a supervisory official of the county, i.e., an official who sets county policies. Baez, supra, 853 F.2d at 77.
 
 
 77
 The irony of the district judge's meandering charge is that the County's alleged failure to discipline was not the cause of, or the moving force behind, the fabrications of its police officers. The "moving force" of these fabrications was stated by both plaintiffs' counsel and the district judge. In discussing his clients' claim during summations, plaintiffs' counsel told the jury that it did not involve the fight at the diner. He said:
 
 
 78
 It's about four lies. It's not about a road scene and a diner scene. It's about four stories concocted by police officers, then off duty who decide that they need to protect themselves. It's not insignificant that Michael Rogers said he didn't want to be involved because he would be finished.
 
 
 79
 Ask for his testimony to be read back if you need it. He would be finished if he had any more problems with the Internal Affairs Bureau. You know what that means, that means as you now know Michael Rogers is retired after the fact, as a 20 year officer. It means that if he was finished then, he didn't get his pension in a couple of years on the force, if he was finished then.
 
 
 80
 The district judge reiterated the same theory of liability in his charge:
 
 
 81
 Here the plaintiffs contend that the defendants pressed the prosecution of themselves out of a personal animus to punish them for the incident at the Pioneer Diner and to protect themselves, rather than to vindicate the law.
 
 
 82
 The fear of the police officers that they would be reprimanded or punished by the Police Department's Internal Affairs Bureau is the exact antithesis of the Commission's finding concerning the County's failure to punish when it has been informed of misconduct.
 
 
 83
 In a recent series of cases, the Supreme Court has set forth the requirements for establishing section 1983 municipal liability based upon custom and practice. Quoting Monell v. Department of Social Servs. of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978) and Polk County v. Dodson, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981), the Court held in City of Canton, Ohio v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989), that "a municipality can be liable under Sec. 1983 only where its policies are the 'moving force [behind] the constitutional violation.' " In City of Oklahoma City v. Tuttle, 471 U.S. 808, 824, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985), the Court said that there must be a "causal connection" between the municipality's policy and the constitutional deprivation. Assuming for the sake of argument only that the County of Suffolk could be held liable for the failure of the district attorney or other unnamed officials of Suffolk County to take appropriate action to punish misconduct, there was no "causal connection" between the County's alleged failure to punish and the police officers' falsifications, admittedly made for the purpose of avoiding punishment. Because I believe that the plaintiffs thus failed as a matter of law to prove a cause of action against the County, I would dismiss their claim against that defendant.
 
 
 84
 If I were not voting to dismiss the complaint against the County, I would vote to grant the County a new trial because of prejudicially erroneous rulings by the district judge. I say this with full awareness of the fact that evidentiary rulings generally are governed by the abuse of discretion standard. The district judge abused his discretion when he ruled that the defendants had waived their right to a hearing on the admissibility of the Commission report because they did not request it before the trial began, a ruling that was not palliated by the conducting of a hearing after the jury had been discharged, which mirabile dictu resulted in a finding that the district judge had not erred in his rulings.
 
 
 85
 Pretrial conferences are governed by Fed.R.Civ.P. 16. That Rule provides in substance that a court may direct the attorneys for the parties to appear before it in conference to discuss various matters, including the securing of advance rulings from the court on the admissibility of evidence. Rule 16(c)(3). The Rule provides further that, after any conference held pursuant to this Rule, an order shall be entered reciting the action taken, and the order "shall control the subsequent course of the action unless modified by a subsequent order." Rule 16(e). The importance of this post-conference order has been emphasized by the Judicial Conference. See Handbook for Effective Pretrial Procedure, 37 F.R.D. 255, 271 (1964).
 
 
 86
 On August 25, 1988 United States Magistrate David Jordan signed an order certifying that all discovery in the instant action was complete and directing the parties to settle a pretrial order in accordance with the district judge's form. On September 20, 1988 the district judge signed a Civil Pretrial Order setting the case for trial on May 9, 1989, directing the exchange of witness lists two weeks before trial, and stating that "[n]o adjournments will be granted except on excellent cause and two weeks notice." The attorneys were directed to appear in court two court days before trial "with all exhibits and documents to be used in the case to mark these items for use at trial under the supervision of the Clerk of this Court" and were notified that "[f]ailure to comply with this requirement shall result in preclusion."
 
 
 87
 The district court's docket contains no reference to a witness or exhibit list filed by plaintiffs, and, although some reference to a witness list is contained in the briefs, I cannot find any such list in the district court files. If plaintiffs served such a list, they did it only one or two days prior to the trial date. I likewise can find nothing in the record or the district court docket to indicate that the parties appeared in court two days prior to trial with all their proposed trial documents and had them marked as exhibits.
 
 
 88
 The only pretrial reference to the Commission's report is contained in the transcript of plaintiffs' argument for reconsideration of the district judge's refusal to dismiss the individual defendants' counterclaim, which took place on March 1, 1989, just eight days prior to the trial date. That argument concluded with the following colloquy between the district judge and plaintiffs' counsel:
 
 
 89
 Our position also is that there is no additional evidence that needs to be developed. The record evidence is clear. The only additional potential evidence that might come in depending on what Dean Tragger's commission finds, depending on the substance and facts of that commission record is, is evidence that in fact the County of Suffolk, perhaps through the County Attorney's Office and the District Attorney's Office of--as I pointed out, if you will, be a singing wagon to protects [sic] police officers and law enforcement out there. If that report bears on this, which we believe it will, and we--we believe that under the facts of this case, particularly in light of what the Appellate Division said and in light of the Police Department at the outset reflected, there is very serious harm, evidence and concern that this counterclaim is being asserted in bad faith.
 
 
 90
 THE COURT: You can move at trial to conform the pleadings to the proof and I will consider it at that time.
 
 
 91
 The next reference to the Commission report was made on May 9, 1989 during a preliminary conference between the district judge and counsel before the jury was sworn, at which time plaintiffs' counsel made an in limine application for admission of the Commission report. At that time, the following exchange took place between the court and plaintiffs' counsel:
 
 
 92
 MR. MEYERSON: We are going to propose in the context of our Monell claim to put into evidence three reports, Your Honor, the most recent of which came out at the end of last--about two weeks ago, the State of New York Commission of Investigation.
 
 
 93
 THE COURT: Denied. You may submit a brief on it.
 
 
 94
 MR. MEYERSON: Your Honor, can I just point out to you that this--there is a recent Supreme Court decision. Let me just tell you the Supreme Court decision. It came down last term and the issue in that was whether or not--
 
 
 95
 THE COURT: Submit a brief. You may not refer to it in your opening. I am not going to decide this in a hurried way.
 
 
 96
 Denied for the time being. Submit a brief.
 
 
 97
 On the following day, May 10, the district judge heard argument on a motion by Commission counsel to quash a subpoena for a portion of the Commission's records served upon it by the plaintiffs' counsel. At that time, the following colloquy occurred between the district judge and plaintiffs' counsel:
 
 
 98
 THE COURT: Well, what relevance does that have that they believe that improper acts or didn't believe that improper acts is hearsay. I--their opinion, the first opinion for the Court is really hearsay. It's inefficient.
 
 
 99
 MR. MEYERSON: Well, let me just--the report, I just--maybe I'm arguing the report in terms of the admissability of the report.
 
 
 100
 THE COURT: Look, you're arguing now an investigator for the Commission for the first place and I'm not going to allow--what is the second question?MR. MEYERSON: If the case was investigated, what did you investigate?
 
 
 101
 THE COURT: All right, I'm not going to allow that.
 
 
 102
 MR. MEYERSON: What were your findings?
 
 
 103
 THE COURT: I'm not going to allow that.
 
 
 104
 MR. MEYERSON: And why wasn't the case addressed in your public report?
 
 
 105
 THE COURT: And I'm not going to allow that. Certainly, that's a matter of discretion of the Commission. I'm not going to delve into the mental processes of the Commission in making investigation and reporting.
 
 
 106
 On May 11 the district judge, without even indicating that he had read the Commission report or the laws under which it operated, stated simply and without elaboration that he found it to be trustworthy. The defense counsel stated that he continued "the objections that were raised in the brief that was submitted to Your Honor." He stated that he believed there should be a hearing on the trustworthiness of the report prior to its entry into evidence. He said that he was raising this argument in response to the court's request that he submit a brief on the issue. The court told defense counsel that he had not asked for a hearing although he knew in advance that the report was being offered; that had he asked for a hearing before the trial began the court would have been pleased to give it to him. The court continued:
 
 
 107
 However, in order to meet your problem so that your client is not prejudiced by your failure to raise the issue in a timely way, should the County be found liable, I will permit you to seek and I will consider favorably a motion for a post-trial review of trustworthiness.
 
 The court continued:
 
 108
 I am very reluctant to allow this in, but I am not going to sit here for weeks and weeks and weeks and in effect retry the [Commission] matter, which is what would be required if the plaintiffs were to make out a case under Monell.
 
 
 109
 Though it is a very difficult problem, I understand it, I may be creating egregious error at the moment, but I will live with it and let's see what happens.
 
 
 110
 I believe that the district judge was prescient when he said that he might be committing egregious error. At the time plaintiffs' counsel made his in limine motion for the admission of the Commission report, the district judge was fully aware that the admissibility of that report was going to be a crucial issue in the case. The jury had not yet been sworn and could have been either discharged or sent home so that a hearing could have been conducted. In my opinion it was prejudicial error for the district judge to hold that the defendants had waived a hearing on the admissibility of the Commission report because they had not demanded it before plaintiffs' in limine motion was made. This prejudice was exacerbated by the manner in which the district judge handled the report, which was described in the district judge's own words as follows:
 
 
 111
 With respect to the issue of the [Commission] report, my intention is to put the basic conclusions, there are a few paragraphs that I marked. We can talk about it later--to the jury under very strict instructions, informing them of the nature of the hearsay because I do not want this case to go on for weeks and weeks while I put before this jury the scores of cases that the [Commission] considered.
 
 
 112
 I suggest that what the district judge "[did] not want", the defendants were entitled to have.
 
 
 113
 Many years ago, the Supreme Court observed that "questions respecting the admissibility of evidence are entirely distinct from those which respect its sufficiency or effect." Columbian Ins. Co. v. Lawrence, 27 U.S. (2 Pet.) 25, 44, 7 L.Ed. 335 (1829). "Admissibility", says Wigmore, "falls short of proof or demonstration." 1 Wigmore on Evidence Sec. 12, at 692 (1983). The substance of this precept has been incorporated in Fed.R.Evid. 104(e). Rule 104(a) provides that "[p]reliminary questions concerning ... the admissibility of evidence shall be determined by the court...." Subdivision (e) of the same Rule provides, however, that "[t]his Rule does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility." This simple doctrine has been adopted by almost every state in the nation. See Crane v. Kentucky, 476 U.S. 683, 689, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986). It must be read in conjunction with Rule 803(8)(C), which excludes public reports and records found to be trustworthy from the application of the hearsay rule. See Bradford Trust Co. v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 805 F.2d 49, 54 (2d Cir.1986) ("[t]he weight and credibility extended to government reports admitted as exceptions to the hearsay rule are to be determined by the trier of fact."); Rosario v. Amalgamated Ladies' Garment Cutters' Union, 605 F.2d 1228, 1251 (2d Cir.1979), cert. denied, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980) (weight and credibility of police report "were matters for the jury, which might be (and were) explored on cross-examination."); McClure v. Mexia Independent School Dist., 750 F.2d 396, 400 (5th Cir.1985) (citing Plummer v. Western Int'l Hotels Co., 656 F.2d 502, 505 n. 9 (9th Cir.1981), for the proposition that the defendant is free to point out deficiencies in an EEOC determination with regard to the weight, if any, to be given by the trier of fact to the determination.); Fayson v. Schmadl, 126 F.R.D. 419, 420 (D.D.C.1988) ("the major premise of [defendant's] argument--that the defendant is entitled at trial to scrutinize the circumstances surrounding the preparation of an official report--is unassailable."); Lempert & Saltzburg, A Modern Approach to Evidence 1065 (2d ed.) ("the objecting party is not precluded from attacking the additional evidence by any permissible means.").
 
 
 114
 In Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 168, 109 S.Ct. 439, 449, 102 L.Ed.2d 445 (1988), the Court described as the "ultimate safeguard" the opponent's right to present evidence tending to contradict or diminish the weight of an admitted report. The district judge said that he "didn't think [that Beech ] was binding." In support of this peculiar ruling, the district judge said that the reason for the ruling "was obvious, that case involved a technical issue." The district judge continued, "[t]his is a political social issue, and there is much more reason for allowing the matters in that were allowed in in Beach [sic] than there are in this case." In my opinion, the district court's reasoning is completely awry. If ever there was a case in which a public report should have been subjected to intense scrutiny, this is it. It is quite obvious that the $300,000 verdict against the County alone resulted from the Commission's findings that the district judge read to the jury.
 
 
 115
 When we put Rules 803(8)(C) and 104(e) together, as we must, we see that a finding of trustworthiness by the court only gets the report into evidence; the opponent must be given the opportunity to prove to the jury that the report is not sufficiently trustworthy to be believed and sufficiently credible to be probative. "Although the rule [803(8)(C) ] is designed to assume the admissibility of a report in the absence of affirmative indicia of untrustworthiness, there is no indication that Congress intended for the reports to escape searching examination. Allowing the jury to evaluate the reports after careful cross-examination and the presentation of expert testimony, therefore, serves both of these functions well; it permits admission without sacrificing scrutiny." Ellis v. International Playtex, Inc., 745 F.2d 292, 303 (4th Cir.1984).
 
 
 116
 By keeping the Commission report out of evidence for the purpose of saving time, and instructing counsel that he was "not going to delve into the mental processes of the Commission in making investigation and reporting", the district judge precluded the defense from effectively attacking the report. When a report is as generalized and wide-ranging as the one at issue herein, the only logical and practical method of controverting it is by challenging the qualifications, credibility and biases of the investigative body and the legitimacy, fairness and wisdom of its methodology. Unless the defendants could explore with the jury the incidents upon which the Commission based its findings of wrongdoing, they were denied effective cross-examination and rebuttal. Unlike the district judge, the jury might have been troubled by evidence that counsel for the Commission who played a leading role in preparing its report had never been a prosecutor, legal aid defense lawyer, police officer, or detective; that he had never tried a case and was unfamiliar with grand jury proceedings; that over two-thirds of the Commission's hearings were private rather than public and many of them were conducted without at least two of the Commission members being present as required by section 73(9) of N.Y.Civ.Rights Law and section 7502(11)(d) of N.Y.Unconsol.Law; that the Commission granted witness immunity in violation of section 7507 of N.Y.Unconsol.Law; and that some of the witnesses upon whom the Commission relied were criminals, whose testimony was less than trustworthy or credible. Perhaps most of all, the jury would have been unhappy with the persistent reluctance of the Commission's counsel to disclose what had transpired during a large portion of the Commission's investigation.
 
 
 117
 I cannot complete my discussion of what I believe was a prejudicially unfair trial without mentioning the district judge's handling of the decision of the Appellate Division, Second Department, in the case of People v. Gentile, 127 A.D.2d 686, 511 N.Y.S.2d 901 (1987). The court there reversed the convictions of Gentile for robbery and Rydstrom for robbery and assault and dismissed the indictment, stating as it did so that the evidence was implausible and was insufficient in quality and quantity to justify the verdicts and that no robbery in fact had occurred. Evidence that the plaintiffs were acquitted of their State charges, which easily could have been stipulated, was necessary to sustain their claim of malicious prosecution. Proof of the appellate court's findings, however, was grossly improper. Rule 803(22) of the Fed.R.Evid. permits evidence of a conviction to be admitted "to prove any fact essential to sustain the judgment." For good reason, this exception to the hearsay rule does not apply to judgments of acquittal. In the first place, a judgment of acquittal does not necessarily mean that the defendant is innocent; it means only that the government has not met its burden of proof beyond a reasonable doubt. See United States v. Viserto, 596 F.2d 531, 536-37 (2d Cir.), cert. denied, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979); McKinney v. Galvin, 701 F.2d 584, 586 n. 5 (6th Cir.1983); United States v. Kerley, 643 F.2d 299, 300-01 (5th Cir.1981). In the second place, the issues of trustworthiness and credibility are "totally unsuited to evaluating judicial findings." Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 505 F.Supp. 1125, 1185 (E.D.Pa.1980). "This result follows because the process of determining trustworthiness, either in limine or by way of defense at trial (if a preliminary determination of trustworthiness were made), cognizes the possibility of calling the author of the factfinding, or his staff members, as witnesses so as to impeach their work. That just cannot be done under the F.R.E. with respect to a judge." Id.
 
 
 118
 Moreover, because the findings in the state case were made by judges, "they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice." Id. at 1186. As the district judge himself noted on a happier occasion, "The danger is that jurors might exaggerate their worth." 4 J. Weinstein & M. Berger, Weinstein's Evidence p 803(22)(01), at 803-354. This danger is present whether evidence of the state court's language is admitted through the front door or, as here, through the back.
 
 
 119
 Over the County's objection, the district judge permitted plaintiffs to introduce into evidence a report of Police Inspector Thomas Loughlin that quoted the Appellate Division decision verbatim, refusing the County's request to redact the prejudicial language. Thereafter, plaintiffs' counsel took advantage of the district judge's ruling by including references to the Appellate Division's findings in his questions, e.g.: "which found that the testimony of complainant Detective Robert Susino was not credible"; "It is true, however, the Appellate Division did say we also find the description of how the theft allegedly occurred to be implausible; isn't that correct?"; "implausible coming from that Appellate Court is not perjury per se, is it, but it's making a fairly significant statement, isn't it?" We blink reality if we do not recognize that the State Appellate Division's findings on the issue of the individual defendants' credibility played a prejudicially important role in the determination of that issue by the jury in the instant case. The findings should not have been admitted.
 
 
 120
 To sum up, we have in this case a bizarre and improper verdict awarding damages against only one of several defendants found guilty of malicious prosecution, in a case that should not even have gone to the jury as to that defendant. We have an erroneous ruling on the issue of waiver and a resultant post-trial trustworthiness hearing that hardly can be said to present the appearance of justice that is so important in the law. We have defendants required to defend against findings excerpted from the report of a State Investigation Commission, which could not be challenged before the jury in an adequate and proper manner, together with improperly admitted findings of a New York appellate court that could not be challenged in any way by the defense. We have plainly erroneous evidentiary rulings and an improper charge concerning the County's responsibility for the alleged prosecutorial deficiencies of its district attorney. In short, we have here a case of a judgment that should not be permitted to stand.
 
 
 
 [1]
 For a complete quotation of the preface to the SIC Report and the excerpted portions that were read to the jury, see Gentile and Rydstrom v. County of Suffolk, 129 F.R.D. 435, 440-41 (E.D.N.Y.1990)
 
 
 [2]
 Defendants argue that their motion for an evidentiary hearing was not untimely because Judge Weinstein initially ruled that he would not admit the SIC Report at the beginning of the second day of trial, but reversed himself on the third day by deciding to admit selected excerpts of the Report. This contention, however, is not supported by our reading of the trial record. In fact, Judge Weinstein never reversed himself. When initially confronted on the first day of trial with the question of admitting the SIC Report, or portions thereof, he informed the parties that "I am not going to decide this in a hurried way," and he asked for a submission of briefs on the issue. Counsel for all parties then complied with his request, and after considering the merits of both positions, Judge Weinstein made a ruling to admit selected excerpts of the Report. Furthermore, counsel for defendants had prior notice, as early as two months before commencement of the trial, that plaintiffs intended to submit the SIC Report into evidence as soon as it was released
 
 
 [3]
 Counsel submitted two letters. In the first, counsel cited Judge Weinstein's statement that he did not want to retry the SIC matter, which we have discussed above. In the second letter, counsel pointed out that Judge Weinstein quashed a trial subpoena for the SIC counsel, John Kennedy, but permitted such a subpoena in connection with the post-trial hearing. However, the trial subpoena was sought by plaintiffs, who wished to call Mr. Kennedy as a witness in order to question him before the jury on whether the Commission had investigated the Gentile-Rydstrom affair and what conclusions it had reached in this connection. Judge Weinstein quashed the subpoena apparently because he thought, among other things, that this line of inquiry would be unduly prejudicial to individual defendants, and defendants' counsel expressed no dissent from this ruling. We do not see why the court's exclusion of a witness, whom defendants did not call, in order to protect defendants' right to a fair trial precluded defendants from thereafter introducing testimony to challenge the credibility of the Report's general findings as to the County
 
 
 [4]
 E.g., in summation, defendants' counsel concentrated on the circumstances of the fight and the alleged robbery of the shield and wallet. His brief reference to the Report emphasized that it contained "not a word, not a whisper ... about this case" and was therefore not relevant to the conduct of the individual defendants in this case
 
 
 [5]
 Relying on Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir.1988), cert. denied, 488 U.S. 1014, 109 S.Ct. 805, 102 L.Ed.2d 796 (1989), the dissent maintains that the County of Suffolk should not be held liable because "[i]n exercising his judgment to prosecute, a district attorney is not a supervisory official of the county, i.e., an official who sets county policies." In Baez, the judgment of liability against a county was based solely upon a wrongful decision of a district attorney to prosecute. In the present case, however, the County's liability is based not upon a specific decision of the District Attorney to prosecute but upon the County's long history of negligent disciplinary practices regarding law enforcement personnel, which gave rise to the individual defendants' conduct in promoting the malicious prosecution of plaintiffs