107 F.3d 2
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Abdallah G. BSEIRANI; AGB International Management
Corporation; and Pittcon Preinsulated Pipes
Corporation, Plaintiffs-Appellees-Cross-Appellants,
v.
George T. MAHSHIE, Defendant-Appellant-Cross-Appellee.
 Nos. 95-9109(L), 95-9145(XAP).
 United States Court of Appeals, Second Circuit.
 Jan. 3, 1997.
 
 Appearing for Appellant-Cross-Appellee: James D. Lantier, Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, NY.
 Appearing for Appellees-Cross-Appellants: David E. Peebles, Hancock & Estabrook, LLP, Syracuse, NY.
 N.D.N.Y.
 AFFIRMED.
 Before KEARSE, WINTER and ALTIMARI, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Northern District of New York and was argued.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby affirmed.
 
 
 3
 George T. Mahshie appeals from a jury verdict, rendered after a remand for a new trial, finding him liable for legal malpractice and for conspiring with Ismail Abou-Khadra to defraud Abdallah G. Bseirani in various business deals involving two companies, Contractors Services Establishment ("CSE") and Saudi Preinsulated Pipes Industries ("SPPI"). Mahshie was, before his disbarment, an attorney in Syracuse who brought Abou-Khadra and Bseirani together, allegedly took a 2% stake in one of the companies (SPPI), drafted various papers in the deal, "mediated" between the parties, and held checks totalling $1.6 million in escrow following a settlement (which later fell through). A jury found for Bseirani on most claims in the first trial. On appeal, we affirmed the finding of liability with respect to Abou-Khadra, reversed with respect to co-defendant Tony Deeb (not involved here), and reversed with respect to Mahshie because of an incorrect jury instruction and evident jury confusion as to damages. See Abou-Khadra v. Mahshie, 4 F.3d 1071 (2d Cir.1993).
 
 
 4
 In the retrial, the jury found for Bseirani on all four counts: (i) conspiracy to defraud and fraud; (ii) civil RICO conspiracy in Abou-Khadra's acquisition of a 49% interest in SPPI; (iii) civil RICO conspiracy in the operation of the "Bseirani/Abou-Khadra business venture"; and (iv) legal malpractice. The jury awarded $237,500 on each of the claims and $475,000 in punitive damages on each of counts (i) and (iv). See Bseirani v. Mahshie, 881 F.Supp. 778, 781-82 (N.D.N.Y.1995).
 
 
 5
 On appeal, Mahshie argues that: (i) the compensatory and punitive damages were duplicative; (ii) the award of punitive damages was error; (iii) the district court should have offset Mahshie's liability by $1.6 million; (iv) the district court erred in holding Mahshie in contempt of court; (v) it was error to allow the jury to consider a cause of action involving an "overall business venture"; and (vi) the jury's finding of proximate cause was not supported by the evidence. Bseirani cross-appeals, arguing that the district court erred in not giving preclusive effect to the first jury's determination of damages on the fraud and civil RICO claims. We disagree with the arguments raised on both appeals and affirm.
 
 
 6
 By not objecting to the instructions at the second trial or requesting that the jury be questioned before being discharged, Mahshie has waived the argument that the damages are duplicative. In any event, the argument is unconvincing on the merits.
 
 
 7
 The standard for waiver for motions like Mahshie's under Rule 49(a) or (b) is controlled by Denny v. Ford Motor Co., 42 F.3d 106 (2d Cir.1994). Under Denny, familiar principles of waiver are to be applied on a case-by-case basis. Id. at 111. In Denny itself, the defendant was found not to have waived its objection to the inconsistency of the verdict because it had objected on the same ground to the district court's instructions and because the claimed inconsistency could not be resolved except by giving new instructions. Id. By contrast, Mahshie did not object to the instructions on duplication grounds. See Lavoie v. Pacific Press & Shear Co., 975 F.2d 48, 54 (2d Cir.1992).
 
 
 8
 Mahshie admits in his reply brief that there is a hypothetical scenario on which the damages are not duplicative. That being the case, he had either to seek clarification from the jury or be held to have waived the argument that the damages are duplicative. After the verdict, Mahshie asked only that the jury be polled. Further, he asked that post-verdict motions be in writing in the face of the court's preference that they be made orally. Because oral motions could have been made before the jury was discharged, counsel's preference for written motions made further inquiry to the jury regarding its findings impossible. The argument is therefore waived.
 
 
 9
 Moreover, even in the absence of waiver, we could not find impermissible duplication. It is true that the full damages sought by Bseirani under each claim might partially overlap. But Bseirani did not receive the full recovery he asked for, and the jury might well have found non-overlapping damages. For example, the jury could have found for Bseirani on count (i) for operation of CSE, on count (ii) for the acquisition of SPPI, on count (iii) for Mahshie's post-December 1983 conduct, and on count (iv) for legal malpractice in the drafting of the documents. Even if liability on count (i) were found only with regard to Mahshie's conduct with respect to the operation of SPPI, there would be no overlap with count (ii).
 
 
 10
 The possibility of non-duplicative awards is enough to sustain the jury verdict. In Gentile v. County of Suffolk, 926 F.2d 142 (2d Cir.1991), the defendants argued that, because the elements of a state-law claim for malicious prosecution and a Section 1983 claim had the same elements and arose from the same facts, and because the awards on the same claims were equal, the damages were duplicative. Id. at 153-54. We disagreed, noting that the plaintiffs had alleged multiple injuries "includ[ing], among others, pain and suffering accompanying an extended period of prosecution, several days of false imprisonment for one of the plaintiffs, psychological trauma induced by the improper exercise of the police and prosecutorial apparatus, loss of job opportunities ... and substantial attorney's fees." Id. at 153. Furthermore, we noted that the jury may have "found that each plaintiff suffered $150,000 worth of discrete, unduplicated injuries as a result of [defendants'] violations of law, and merely split the total amount equally between the state and federal causes of action." Id. at 154. We noted that, as here, the jury insisted, when asked, that there was no duplication in the award. Id.
 
 
 11
 Mahshie seeks to distinguish Gentile on the ground that Bseirani suffered only economic damages. However, in Gentile, we cited a litany of injuries that could be termed psychological but did not necessarily result from the same injury. Id. at 153. Rather, we sought to find conceivable sets of nonoverlapping injuries that would result in nonoverlapping damages. Whether or not all of Bseirani's injuries can be termed "economic," the jury could have found distinct economic injuries under each of the four claims, as discussed above. This case is, therefore, extremely similar to Gentile.
 
 
 12
 By contrast, in Conway v. Icahn & Co., 16 F.3d 504 (2d Cir.1994), upon which Mahshie relies, we found duplication because there was a single injury--not just a single type of injury--namely, the unauthorized liquidation of a portion of the plaintiff's account in order to satisfy a margin call, which led, therefore, to a single set of damages, id. at 511. In cases such as Gentile and the present one, the jury could have found separate injuries while awarding the same amount on each, a decision to which we must defer. Gentile, 926 F.2d at 154 ("The policy of deferring to a jury verdict is a powerful one, even in cases in which the jury has taken action that is at first blush difficult to explain.").
 
 
 13
 Mahshie's argument that punitive damages are unavailable as a matter of law is meritless. Mahshie made no such objection in the district court and therefore waived this argument.
 
 
 14
 In any event, under New York law, "although punitive damages are not ordinarily receivable in an action for fraud, 'where the wrong involves some violation of duty springing from a relation of trust or confidence', or where there is an abuse of professional status by repeated fraudulent representations, a jury may consider whether the defendant's degree of moral culpability warrants the assessment of punitive damages." Green v. Leibowitz, 118 A.D.2d 756, 758, 500 N.Y.S.2d 146, 149 (2d Dep't 1986) (citations omitted). In Green, the court affirmed a refusal to dismiss a claim for punitive damages against an attorney for allegedly fraudulent malpractice. Id. The evidence here would allow a reasonable jury to find that Mahshie's fraud exhibited the required degree of culpability.
 
 
 15
 Mahshie argues that the amount of damages should be reduced by the $1.6 million paid by Abou-Khadra to Bseirani. We agree with the district court that the payment by Abou-Khadra should apply first to reduce the total judgment. See, e.g., Alling v. American Tool and Grinding Co., Inc., 648 F.Supp. 1344, 1348-49 (D.Colo.1986) (subtracting settlement amount from total judgment). The payment was made after judgment was entered against Abou-Khadra, and we see no reason not to treat it like any other payment by Abou-Khadra toward the judgment against him.
 
 
 16
 Mahshie also challenges the district court's finding that he was in civil contempt. The district court's determination is consistent with the three-prong test for civil contempt in EEOC v. Local 580, 925 F.2d 588, 594 (2d Cir.1991):(i) there is a failure to comply with a clear and unambiguous order of the court, (ii) proof of the noncompliance is clear and convincing, and (iii) the alleged contemnor has not been reasonably diligent and energetic in attempting to accomplish what was ordered. Contrary to Mahshie's argument, willfulness is not an element of civil contempt. We therefore see no error in the district court's contempt finding.
 
 
 17
 The district court also properly rejected as untimely Mahshie's argument that the evidence did not support the use of the term "Bseirani/Abou-Khadra business venture" in interrogatory 8. See Bseirani v. Mahshie, 881 F.Supp. at 783. That there was a RICO enterprise was established at the first trial and not disturbed on appeal. Id. There was thus sufficient evidence to support use of the term. In any case, the district court correctly found that the jury did not reach a seriously erroneous verdict or even one against the weight of the evidence. See id.
 
 
 18
 Finally, we find no merit in Mahshie's claim of insufficiency of the evidence. We agree with the district court's rejection of these arguments. See id.
 
 
 19
 Bseirani cross-appeals from the district court's denial of collateral estoppel (or law of the case) effect to the total amount of damages found by the first jury on the fraud and civil RICO claims. Bseirani argues that the only issue in the second trial was Mahshie's liability and that once proven, he should be held jointly and severally liable for that $1,930,500 amount.
 
 
 20
 We disagree. In our decision in the earlier appeal, we noted the likelihood of juror confusion. In the first trial, the jury awarded $1,930,500 as damages based on Abou-Khadra's acquisition of SPPI through a pattern of racketeering activity. Abou-Khadra, 4 F.3d at 1080. Even if that claim was identical to count (ii) in the present case, we cannot accept Bseirani's argument. The same jury that found $1,930,500 in damages also found $0 compensatory damages against Mahshie. Nevertheless, it awarded punitive damages against him and, when asked to reconsider, reiterated this odd conclusion. Id. at 1082-83. We noted on the first appeal that "there is considerable evidence that the jury was confused as to Mahshie's liability for damages under RICO," id. at 1082, and that "[t]he existence of juror confusion [was] undeniable," id. at 1083. Although the language of our first opinion might have been more precise, a fair reading of that opinion is that we believed that a new trial as to both liability and damages was required in light of the jury's confusing findings. Certainly, it would also be very odd to give collateral estoppel effect to the portion of the first verdict awarding damages in light of the finding of $0 compensatory damages specific to Mahshie.
 
 
 21
 We therefore affirm.